# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

MELTON TRUCK LINES, INC., and HENRY PERRY, JR.,   )
                                    )
           Plaintiff(s),   )
                                      )     Case No. 04-CV-263-JHP-SAJ
vs.   )
                                      )
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, a foreign insurance company, GULF INSURANCE COMPANY, a foreign insurance company, MOTOR TRANSPORT UNDERWRITERS INC., an Indiana corporation,   )
                                      )
          Defendant(s).   )

## OPINION AND ORDER

Currently before the Court for consideration is the Motion by Defendant Motor Transport Underwriters to Compel Defendant Indemnity Insurance Company of North America ("IINA") to answer interrogatories. [Docket No. 134], and the motion by Plaintiff Melton Truck Lines and Henry Perry, Jr. ("Melton") to compel the production of documents from IINA regarding reinsurance and loss reserves. [Docket No. 140]. Gulf Insurance Company ("Gulf") and Motor Transport Underwriters, Inc. ("MTU") joined in Melton's motion. The Court held a hearing and heard oral argument on these motions on June 15, 2005. Defendant IINA additionally requested and was given permission to file a response brief to Plaintiff's Melton's motion to compel documents.

The Court has considered the arguments of counsel, the briefs of the parties, and the referenced case law. The Court **denies** the motion to compel Defendant IINA to

answer interrogatories [docket no. 134-1] and **grants** the motion to compel documents from Defendant IINA.  [Docket Nos. 140-1, 147-1, 146-1].

## I.    MOTION TO COMPEL RESPONSE TO INTERROGATORIES

Defendant Motor Transport Underwriters Inc. ("MTU") contends that Defendant IINA has not adequately responded to several Interrogatories.  Defendant MTU requests that Defendant IINA respond to the following Interrogatories:  (Interrogatory number five) identify, from 1995 to present all individuals at IINA that supervised claims similar to the *Karr* claim; (Interrogatory number six) identify, for 1995 - present, all attorneys that IINA retained to try matters in Illinois similar to the *Karr* claim; (Interrogatory number seven) identify, for 1995 - present, all matters tried to verdict in Illinois by IINA; and (Interrogatory number eight); identify, for 1995 - present, the corporate structure at IINA that handled matters similar to the *Karr* matter.

Defendant IINA maintains that the interrogatories are not relevant to the issues in this case because prejudice is determined by the facts in this case, not the facts in other cases.  Defendant IINA also asserts that the requests are vague, overly broad and unduly burdensome.  Defendant notes that IINA and MTU have no claims against each other, and that the information MTU seeks is therefore not relevant.

MTU notes that IINA is the excess insurance provider in this case and that IINA has denied coverage based upon IINA's insistence that the notice was too late.  MTU seeks to establish whether or not IINA would have done anything differently if notice had been

provided to IINA earlier.  MTU has agreed to limit the scope of its requests to Illinois[1/], and MTU is willing to narrow the time frame of its requests to five years (from the original ten years).

The Court concludes that Interrogatories, as drafted by MTU, are overly broad and burdensome.  The Interrogatories request information on claims "like or similar to the *Karr* action."  MTU has not attempted to define "like or similar to the Karr action," and this Court will not redraft the Interrogatories served by MTU.  The Court concludes that the Interrogatories, as drafted, are overly broad and burdensome.  MTU's motion to compel IINA to respond is **denied**.  [Docket No. 134-1].

## II.   MOTION TO COMPEL REINSURANCE AND LOSS RESERVES

Plaintiff Melton Truck Lines, Inc. ("Melton") has moved to compel the production of documents from IINA regarding reinsurance and loss reserves.   [Docket No. 140].  Plaintiff's motion is joined by Defendant Gulf Insurance Company [docket no. 147], and Defendant MTU [docket no. 146-1] (hereinafter "The Moving Parties").  The Moving Parties maintain that the reinsurance and loss reserves are relevant to the issue of notice in this action.  The Moving Parties additionally maintain that the documents must be disclosed pursuant to Fed. R. Civ. Proc. 26(a)(1)(D) which requires disclosure of all insurance agreements that may pertain to liability to satisfy part or all of a judgment.  IINA contends that the documents should not be produced.

---

[1/]   Interrogatory number five is not limited to Illinois, but MTU asserts that it was intended to be limited to Illinois.

### A.   Reinsurance is Discoverable

Fed. R. Civ. Proc. 26(a)(1)(D) provides that a party must disclose to other parties: "[a]ny insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment."  The Moving Parties contend that reinsurance agreements and any documents or correspondence regarding the reinsurance are discoverable.  IINA contends that such information is not required under Fed. R. Civ. Proc. 26(a)(1)(D) because whether or not the reinsurer would be required to satisfy a judgment is vague.  IINA relies upon *Rhone-Poulenc*, 139 F.R.D. 609 (E.D. Pa. 1991) which limited discovery because the action was a declaratory judgment and "vague and limited monetary damages are insufficient to bring the reinsurance documents under the scope of rule 26(b)(2)."[2/]

The Court is not persuaded that IINA can, under the circumstances in this case, avoid production of the reinsurance information under Fed. R. Civ. Proc. 26(a)(1)(D).  The Court finds that IINA must produce the information.  *See Tardiff v. Knox County*, 224 F.R.D.

---

[2/]   IINA relies upon the October 1, 1991 *Rhone-Poulenc* decision.  That court granted a motion to reconsider some of the issues previously decided by the court in the October 1, 1991 decision.  *See Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 1991 WL 237636 (E.D. Pa. November 7, 1991).  In the reconsideration decision, the court permitted discovery pursuant to Fed. R. Civ. Proc. 26(a)(1)(D) of certain reinsurance agreements.  1991 WL 237636 at *2.  The court additionally found that reinsurance information was relevant as possibly disputing the lack of notice defenses raised by the insurers.  *Id.* at *3.  The court further found production required by Fed. R. Civ. Proc. 26(b)(2) where a party sought money damages which is the situation presently before this Court.  *See Rhone-Poulenc Rorer Inc.*, 1991 WL 237636 at *2 ("Thus the agreements between *these* insurers and their reinsurers become discoverable under rule 26(b)(2), because the reinsurers may be liable to indemnify the insurers for payments made to satisfy the judgment.").

The Court assumes that IINA did not have actual knowledge of the November 7, 1991 reconsideration decision by the *Rhone-Poulenc* court on the specific issues relied upon by IINA in the *Rhone-Poulenc* October 1, 1991 decision.  The Court assumes that if any party had actual knowledge of the November 7, 1991 reconsideration decision that party would have informed the Court of the *Rhone-Polenc's* reconsideration.  *See* Okla. Rules of Professional Conduct, Rule 3.3.  The Court notes the failure of all counsel involved in this issue in not advising the Court of the reconsideration decision.

522 (D. Me. 2004) ("Reinsurers (person[s] carrying on an insurance business) are insurers' own insurers.  If Insurers are held liable under the Policies, they will turn to their reinsurers for partial indemnification, as provided in the reinsurance agreements, for any 'payments made to satisfy the judgment.'") (*citation omitted).*

Plaintiff MTU additionally asserts that the reinsurance documents should be produced because the documents are part of the claims file and that everything within the claims file must be produced based upon the insurer/insured relationship.  IINA does not deny that documents in the claims file must be produced.  IINA suggests that certain information is "arguably not within the claim file" because the information is dated five days after the verdict in the underlying case.  IINA does not does not explain why the contents of the claims file is determined based upon the day of the verdict.  Because the Court concludes that reinsurance documents must be produced under the Fed. R. Civ. Proc., the Court declines to further address this issue.

### B.    Loss Reserves Discoverable

The Moving Parties additionally request production of loss reserves information. The Moving Parties maintain such information is relevant because of IINA's assertion that it did not receive timely notice and because of MTU's allegations of bad faith, breach of contract, and damages.  The Moving Parties maintain that discovery of loss reserves has been permitted in bad faith actions.  Melton asserts that the delay that IINA took in paying the Karr claim has damaged Melton and that the information which would most benefit Melton in establishing IINA's bad faith is a comparison of the date and amount of the loss reserve set by IINA after judgment was entered in the Karr action to the date and amount paid by IINA in its settlement of the Karr claim.

IINA contends that IINA can provide the dates of setting the loss reserves without providing all of the documents.  IINA does not fully address the Moving Parties' arguments that the information is relevant to the bad faith claims, but claims that this argument is premature because IINA will move to dismiss the bad faith claims.  In this district, discovery is rarely stayed pending the decision and filing of a motion to dismiss.  IINA presents no specific reason other than the act of filing a motion to dismiss to support their argument.

The Court has reviewed the cases relied upon by IINA and finds them inapplicable.  *See e.g. Leski, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99 (D.N.J. 1989) (reserves only tenuously relevant to whether insurance exists); *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co., et al.*, 139 F.R.D. 609, 612 (E.D. Pa. 1991) (evaluation usually does not include consideration of coverage)[3]; *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.,* 117 F.R.D. 283, 288 (D.D.C. 1986) (assessment of reserve usually does not include evaluation of coverage).  Many of the cases relied upon by IINA find that reinsurance is not relevant to establish that insurance coverage exists in an action in which the insurer contests coverage.  The cases relied upon by IINA do not address notice issues.

IINA also relies on *Signature Development Companies, Inc. v. Royal Ins.*, 230 F.3d 1215 (10th Cir. 2000).  *Signature* was decided at the summary judgment stage, and does not specifically address discovery issues or relevance.  The *Signature* Court does not specifically address whether or not the information is discoverable.  The *Signature* court did note that the reserve calculation was merely set for future liabilities and that the parties

---

[3]  Furthermore, as previously discussed (*see* fn. 2, above), the *Rhone-Poulenc* court reconsidered a portion of its decision and determined that reinsurance information was relevant as to notice.

could not establish damages alleged in a breach of good faith and fair dealing action with regard to a duty to settle.  In contrast, Plaintiffs in this action seek the information with regard to establishing Plaintiffs bad faith caused by IINA's alleged delay in settling the claim.

The parties in this action do not seek information regarding loss reserves and reinsurance agreements to establish coverage.  The parties assert that information as to when IINA established a loss reserve is relevant to when IINA received notice of the claim. The parties additionally assert that the timing and setting of the loss reserves as compared with the underlying litigation is relevant.  The Court finds that the information is relevant. *See e.g. Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404, n.8 (9th Cir. 1987); *Am. Medical Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 1999 WL 74195 (E.D.  La.).

IINA additionally claims that the documents are protected by the work product privilege.  IINA has the burden to establish that the privilege applies.  IINA relies upon *Rhone Poulence*, 139 F.R.D.609 (E.D. Penn. 1991) and *Certain Underwriters at Lloyd's, London v. The Fidelity and Casualty Insurance Company of New York* 1998 WL 142409 (N.D. Ill 1998).  In *Rhone Poulence*, the court found that the reserve information was protected by the work product doctrine.  In making this finding, the court discussed the reserve calculation.

> [A] reserve essentially reflects an assessment of the value of the claim taking into consideration the likelihood of an adverse judgment.  Such estimates of potential liability do not normally entail an evaluation of coverage based upon thorough factual and legal consideration when routinely made as a claim analysis. . . . Where the reserves have been established based on legal input, the results and supporting papers most likely will be work-product and may also reflect attorney-client privilege communications.

-- 7 --

*Rhone Poulence*, 139 F.R.D. at 613.  IINA also relies upon *Certain Underwriters at Lloyds's London*, 1998 WL 142409, in which the court discussed  application of the work product doctrine.

> The jurisprudence surrounding whether reserve information is privileged under the work product doctrine is by no means settled.  While some cases hold that reserve information reflects attorney thoughts made in anticipation of litigation and is thus privileged, others hold that reserve figures are made in the ordinary course of business and are not privileged. . . . Inexorably, the question of whether reserve figures are protected by the work product doctrine must be made on an ad-hoc basis.  We conclude that reserve recommendations, in this case, do reveal attorney mental impressions, thoughts, and conclusion since the reserve figures were calculated only after an attorney acting in his legal capacity carefully determined the merits and value of the underlying case.  This being the case, we next look to whether the reserve recommendations were made in anticipation of litigation or whether they were done in the ordinary course of business.

*Id.* at *2.  In each of the cases relied upon by IINA, the court determined, based upon the facts of the particular case, that the work product privilege applied.  In this case, IINA asserts only that the reserve information was dated "long after IINA received the late notice."  *See* IINA's Response to Plaintiff's Motion at 12.  IINA provides insufficient information to substantiate its claim of work product privilege.  Plaintiffs maintain that the information was prepared in the ordinary course of litigation.  The Court also notes that the privilege is a qualified one.  The Court concludes that IINA has not met its burden of establishing the applicability of the privilege.

IINA additionally requests that the Court stay ruling on the motion to compel production of the documents until after the Court rules on IINA's motion to dismiss the

complaint.  The Court **denies** IINA's request.  The Court rarely stays discovery pending a decision on a motion to dismiss.  The Court declines to do so in this case.

IT IS SO ORDERED.

Dated this 14th day of July 2005.

Sam A. Joyner
United States Magistrate Judge