IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MELTON TRUCK LINES, INC., and HENRY PERRY, JR., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 04-CV-263-JHP-SAJ |
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, MOTOR TRANSPORT UNDERWRITERS, INC., GULF INSURANCE COMPANY, and SWETT & CRAWFORD OF TEXAS, INC., | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | ) ) ) | |
| Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| GULF INSURANCE COMPANY, | ) ) | |
| Third-Party Defendant. | ) | |

## ORDER

Now before the Court is Defendant/Third Party Plaintiff Indemnity Insurance Company of North America's ("IINA") Choice of Law Motion (Dkt.#177). The instant case involves an insurance coverage dispute in which the Plaintiffs, Melton Truck Lines, Inc. ("Melton"), and Henry Perry, Jr. ("Perry"), have filed a Fourth Amended Complaint against Gulf Insurance Company ("Gulf"), IINA, Motor Transport Underwriters, Inc. ("Motor Transport"), and Swett & Crawford of Texas, Inc. ("Swett & Crawford"). Melton is an insured of both Gulf and IINA. Melton and Gulf entered into a

motor carrier excess indemnity contract, and Melton and IINA entered into a commercial umbrella liability policy. Pursuant to its terms, the policy issued by IINA to Melton will not become effective until exhaustion of the self-insured rententions of Melton and the underlying coverage provided by Gulf take place.

Motor Transport acted as an insurance broker for Melton in obtaining the insurance contracts with Gulf and IINA. Swett & Crawford's predecessor provided notice of the underlying lawsuit to IINA and allegedly assisted Melton in obtaining the insurance contracts that Melton entered into with Gulf and IINA.

The record reveals that on February 18, 2000, Perry was driving a semi-tractor/trailer owned by Melton when he was involved in an accident in Illinois with another commercial truck driven by Dale Karr, Jr. ("Karr"). Karr sustained serious injuries and sued Melton Truck Lines and Perry in the United States District Court for the Central District of Illinois on February 4, 2002. Notice of the claim, or lawsuit, was allegedly provided to IINA on October 31, 2003. On November 14, 2003, after a four day trial, a jury returned a verdict in favor of Karr in the amount of $14,650,000.

The claims in the Fourth Amended Complaint seek alleged damages as a result of the underlying verdict in favor of Karr. It is IINA's position, however, that Melton did not provide adequate notice of the claim at issue, thereby violating a condition precedent to coverage contained in Section IV of the policy. IINA has filed a Counterclaim against the Plaintiffs seeking reimbursement of the funds it incurred to settle Karr's judgment on behalf of the Plaintiffs, and with the acquiescence of Melton. IINA has also filed a Third Party Complaint against Gulf alleging that it failed to settle the claim within its policy limits when it had the opportunity to do so.

Neither the IINA insurance contract at issue, nor the contract between Melton and Gulf, contain a choice of law provision. Therefore, the conflict of laws of the forum state, in this case Oklahoma, must be applied to determine whether Oklahoma,or Illinois law governs the interpretation of the contract. *Rhody v. State*

*Farm Mutual Ins. Co.*, 771 F.2d 1416, 1417 (10th Cir. 1985). Plaintiffs contend that their contract-based claims, namely the declaratory judgment claim, and breach of contract claim, are governed by Oklahoma law. When there is a conflict of laws with respect to contract actions, as in the present case, Oklahoma adheres to the *lex loci contractus* rule. Under the doctrine of *lex loci contractus*, where there is a conflict of laws in a contract action, Oklahoma interprets a contract according to the law of the place where the contract is to be performed. *Rhody v. State Farm Mutual Ins. Co.*, 771 F.2d at 1417. When the contract does not indicate the place of performance, the law of the place where the contract is made governs its interpretation. *Id.*; *see also*, *Moore v. Subaru of America*, 891 F.2d 1445, 1449 (10th Cir. 19890; *Burgess v. State Farm Mutual Automobile Ins. Co.*, 77 P.3d 612, 615 (Okla. App. 2003); *Bohannan v. Allstate Ins. Co.*, 820 P.2d 787 (Okla. 1991).

This rule is well-settled under Oklahoma law. *See Rhody*, 771 F.2d at 1419; *see also*, *Telex Corp. v. Hamilton*, 576 P.2d 767, 768 (Okla. 1978); *Collins Radio Co. of Dallas v. Bell*, 623 P.2d 1039, 1045 (Okla. App. 1980). In fact, this rule has been codified in Okla. Stat. tit. 15, section 162 (1971) which provides:

> A contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

*Id.*; *see also Collins Radio Co.*, 623 P.2d at 1045 (recognizing that the rule generally invoked in contract cases is the choice of law rule embodied in Okla. Stat. tit. 15, section 162).

Under Oklahoma law, the place of performance and the place of contracting are of greatest significance in determining the applicable law. *Herren v. Farm Bureau Mutual Ins. Co., Inc.*, 26 P.3d 120, 123 (Okla. App. 2001). Here, the insurance contract at issue, (the IINA policy of excess insurance) is silent on the place of performance. Accordingly, this Court must apply the law of the place where the contract was made.

First, according to Plaintiff's Complaint, Oklahoma was the

place where the alleged contract was entered into, through the efforts of defendant, Motor Transport, in the solicitation and placement of Melton's insurance. The fact that the contract was not signed in Illinois, but rather in Philadelphia, further removes Illinois from the equation in the formation of the contract. Moreover, the contract was delivered in Oklahoma.

The Oklahoma Supreme Court has held that the law of the state in which an insurance policy is delivered is deemed to be the place where the contract is made and therefore the law of that state governs interpretation of the contract. *National Life & Accident Ins. Co. v. Whitlock*, 180 P.2d 647, 649 (Okla. 1946); see also, *John Hancock Mutual Life Ins. Co. v. Tuggle*, 303 F.2d 113 (10th Cir. 1962)(finding that the law of the state in which the application for the policy was made and where delivery of the policy was to be made was the law that would govern interpretation of the contract). In *Mortgage Bond Co. v. Stephens*, 72 P.2d 831, 841 (Okla. 1937), the court followed the same principal: "The delivery of the instrument is its completion, and the place of delivery is in general the place of the contract. Thus, where an instrument is signed in one state and delivered in another, the law of the latter governs, since the contract is made in the latter state." *Id*. (quoting *Dennison v. Phipps*, 211 P. 83, 86 (Okla. 1922).

In *Tillman v. Camelot Music, Inc.*, 408 F.3d 1300 (10th Cir. 2005), the Court noted the importance of delivery of a policy:

> Title 36 of the Oklahoma Statutes ("Oklahoma Insurance Code"), which governs insurance practices, states in relevant part: "This article shall not apply to ... (2) Policies or contracts not issued for delivery in Oklahoma nor delivered in Oklahoma ..." Okla. Stat. tit. 36, section 3601. Unfortunately, the statute does not separately define what it means to "deliver," or "issue" a policy. Additionally, there are no reported Oklahoma cases specifically interpreting this statute.
>
> The only context in which these terms are discussed is in cases dealing with the validity of an insurance contract that is conditioned on the issuance or delivery of the policy to the policyholder. The following summary of the law is helpful.

> Contracts of insurance are frequently conditioned upon the execution, issuance or delivery of the policy. These terms can have distinct meanings but may also be used interchangeably. For example, the term "issuance" has been employed to refer to the preparation and signing of the policy, the delivery and acceptance of the policy, and to the preparation, execution, and delivery of the instrument as a binding obligation. A distinction between "issuance" and "delivery" is sometimes recognized in construing a statute or determining when a contract of insurance is in effect. "Delivery" is not essential to the completion of a contract which becomes effective, according to its terms, upon the "issuance" of the policy.
>
> *Lee R. Russ & Thomas F. Segalia, Couch on Insurance section 14:1 (3d ed. 1995).* Under Oklahoma law, actual physical delivery is not always required; it may be constructive. *Mid-Continent Life Ins. Co. v. Dees*, 269 P.2d 322, 323 (Okla. 1954)... In this case, the insurance contract does not specifically condition its effectiveness on delivery.

*Id.* at 1303, 1304.

In the instant case, the policy specifically conditioned its effectiveness on delivery. The binder to the insurance contract indicates that it is the temporary insurance contract until the policy is: "... issued, which, **when delivered, replaces this binder**." (emphasis added). Therefore, the policy would not replace the binder, or in other words, become effective, until the policy was delivered. Further, the declaration page states, "By signing **and delivering the policy to you**, we state that it is a valid contract." (emphasis added). Therefore, the contract was not completed until it was delivered to Plaintiffs. The IINA insurance contract at issue was solicited by Motor Transport and delivered to Plaintiffs in Oklahoma. Accordingly, the contract was made in Oklahoma and therefore, Oklahoma law applies.

Finally, public policy requires that Oklahoma law apply. If the law of the state where the contract was made violates Oklahoma public policy, Oklahoma law should be applied. *Bohannan* at 797. IINA's contends it does not have to prove prejudice resulting from

notice it alleges was late.  Oklahoma law, however, requires an insurer to prove that it has been prejudiced by any late notice in order to avoid coverage:

> We think it is in accord with the public policy of of this state, and the majority of better reasoned authorities on insurance policies, like the one involved here, to place the burden upon the insurer to show prejudice for noncompliance with the policy's provisions concerning written notice, where the evidence shows that the insurer has received actual notice, or knowledge of an accident, or a potential claim arising out of it, covered by the policy.

*Fox v. National Savings Insurance Co.*, 424 P.2d 19, 25 (Okla. 1967); see also *First Bank of Turley v. Fidelity and Deposit Ins. Co.*, 928 P.2d 298, 308 (Okla. 1996).  Melton denies that notice to IINA was improper or late.  Since IINA argues that it was provided late notice of the Karr claim, IINA is required to establish that it has been prejudiced by the late notice in order to avoid coverage for the Karr claim, pursuant to Oklahoma's public policy.

IINA argues that Oklahoma public policy does not require the application of Oklahoma law because Illinois law accounts for prejudice in its analysis for untimely notice of claims.  However, the standards used in Oklahoma and Illinois are different. As IINA points out, in Illinois, prejudice is merely a factor which is considered as to the notice issue.  *Kerr v. Illinois Central Railroad Co.*, 670 N.E.2d 759, 766 (1st Dist. 1996).  See also, *American States Ins. Co. v. National Cycle, Inc.*, 631 N.E.2d 1292 (App. Ct. Ill. 1994); and *Zurich Insurance Company v. Walsh Construction Co. of Illinois, Inc.*, 816 N.E.2d 801 (2004)(*prejudice is a factor to be shown for an excess insurer to avoid liability on a policy combined with reasonableness of insured's reasons for delay*). While IINA describes this as a slight difference, as *Fox* demonstrates, it is the insurer's burden to demonstrate prejudice to avoid coverage for a claim. *Fox* at 25.  In Oklahoma, prejudice is not merely a factor in determining whether an insurer can avoid coverage for untimely notice, it is the factor.  Oklahoma's public policy would be violated if Illinois law is applied to the issue of

late notice.

With respect to Plaintiff's tort-based claims, "[t]he Oklahoma choice of law rule requires application of the law of the state with the most significant relationship to the parties." *Moore v. Subaru of America*, 891 F.2d 1448,1449 (10th Cir. 1989); see also *Edwards v. McKee*, 76 P.3d 73, 75 (Okla. App. 2003).

The Court considers the following four factors in determining which state's law to apply: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred." *Edwards*, 76 P.3d at 75-76; see also *BancOklahoma Mortg. Corp. v. Capital Title Co.*, Inc., 194 F.3d 1089, 1103-1104 (10th Cir. 1999).

Significantly, the torts Plaintiffs allege to have been committed were committed in Oklahoma. That the accident may have been the underlying act from which the tort claims stem has no bearing on the analysis of the most significant relationship test as it relates to the actual claims being litigated in this matter, specifically claims of bad faith, breach of fiduciary duty, and concurrent liability. The determination of which law applies hinges on an analysis of what state has the most significant relationships to those claims, not to the underlying accident. A review of the facts reveals that Oklahoma has the most interest and significant relationships to the tort claims being alleged.

First, the insured, Melton, is an Oklahoma resident. Second, Melton's principal place of business is in Oklahoma. Third, although Motor Transport is an Indiana corporation, Motor Transport conducts and solicits business in Oklahoma. Fourth, IINA and Gulf are admitted carriers in Oklahoma and obviously solicit and conduct business in Oklahoma. Fifth, the contract at issue was made in Oklahoma. Sixth, the contract contains Oklahoma endorsements.

Seventh, but most importantly, the torts and the injury to the Plaintiffs occurred in Oklahoma. In other words, the injury to Melton resulting from the alleged tort-based claims occurred in

Oklahoma because that is where Melton is located and that is where the direct impact of the torts takes place.  Melton specifically claims that Defendants' acts in refusing to settle the underlying suit, failing to post the appeal bond in a timely fashion, and failing to provide proper notice of the underlying suit, resulted in injury to Melton in that such acts damaged Melton's credit rating.  The alleged acts constituting the torts Melton claims were directed to and impacted Melton, which is a company located in and has its principal place of business in Oklahoma.  Thus, the torts and the injury occurred in Oklahoma.

Accordingly, the Choice of Law Motion of Defendant/Third Party Plaintiff IINA is denied as the Court finds Oklahoma law applies to this case.

**IT IS SO ORDERED** this 2nd day of November 2005.

James H. Payne
United States District Judge
Northern District of Oklahoma